133 P.2d 708

**JOHNSON v. MERCANTILE INS. CO. OF AMERICA.**

No. 4706.

Supreme Court of New Mexico.

Jan. 28, 1943.

Robert A. Morrow, of Raton, for appellant.

Wilson & Wright, of Raton, for appellee.

SADLER, Justice.

The plaintiff (appellee) sought and was awarded recovery on a fire insurance policy issued by the defendant on account of the destruction by fire of an automobile. Trial was before a jury. Judgment was entered on the verdict and the defendant appeals. Several claims of error are made which will be considered in the order of their importance.

First, it is asserted that the verdict is without substantial support in the evidence and is contrary to the great preponderance thereof, in that the proof shows incontrovertibly that the plaintiff himself set fire to and caused the destruction of the automobile in question. In the presentation of this contention, the defendant proceeds along dual lines, viz., (1) that the testimony of defendant's witness should have been believed, and; (2) that the physical facts prove the fire was of incendiary origin. The testimony for and against the verdict is related and from it the defendant concludes fair and reasonable minds could not differ as to the origin of the fire.

In this connection it is pointed out from defendant's evidence that the plaintiff, a single man, employed at a salary of $35 per month with room and board, a short time before the fire purchased a four door Buick sedan for $876 under a conditional sales contract which acknowledged a down payment of $245 and called for payments of the balance at the rate of $32 per month for five months and then a lump sum payment of $410; that up to the time of the fire the plaintiff had paid the January 10, 1940, installment, had defaulted as to $10 on the February 10, 1940, installment, and

that the March 10, 1940, installment was due on the very day of the fire with plaintiff having no apparent means to meet the same; that plaintiff lacked the money with which to purchase his 1940 license for the car; that on the morning in question, the plaintiff started out in the car on a journey to one Fred King's place near Dillon, south of Raton, to collect some money claimed to be owing him by King with which he proposed to buy a license for the car and also to purchase some laying hens; that within eighty or ninety yards of King's house the car stopped at the top of an arroyo near an old well and rolled back into the arroyo; that pretending he was out of gasoline he walked to King's house for the purpose of borrowing some gasoline with which to start the car.

The defendant further calls attention in its evidence to testimony that some gasoline was siphoned from King's car into a gallon fruit jar and that plaintiff carrying the fruit jar proceeded with King toward the car; that as they approached the car smoke was seen coming from it; that King ran to the car, opened the door, looked in and saw a fire in it; that there was an odor of gasoline at that time coming from the car; that King hurried to the other side of the car and tried to open the door but failed and was about to return to the side where he had opened the door when the plaintiff, after having admonished him to "look out", suddenly exclaimed, "Look out, I will finish it", and threw gasoline into the car, whereupon it burst into flames; that when King asked plaintiff why he had not advised him of what was taking place, since this would get him, King, into trouble, the plaintiff replied, "No, you don't know anything about this".

So much for the gist of the eye witness testimony supporting the defendant's claim that the plaintiff set fire to his own car. It is enough to say, without unduly extending this opinion by a detailed recital of it, that in addition to himself denying outright that he set fire to the car and also contradicting the testimony of defendant's witnesses that he did, the plaintiff produced witnesses giving testimony from which reasonable inferences could be drawn directly impeaching the defendant's testimony as to origin of the fire, if the jury saw fit to believe the testimony and draw such inferences. This, it apparently did. The plaintiff points to testimony that he had worked the starter a number of times in trying to start the car; that this could have caused a flow of gasoline into overheated parts of the car where it might have become ignited. He also calls attention to the fact of his absence from the car for about thirty-five or forty minutes as shown by the testimony. Stated simply, the evidence of the plaintiff and his witnesses was to the effect that the plaintiff did not burn the car and he could offer no explanation as to how it started. The evidence of defendant and its witnesses was to the effect that the plaintiff did burn the car through the use of gasoline which he poured directly into the car on a smouldering fire. This conflict in the evidence was resolved by the jury in plaintiff's favor and, unless the ver-

dict is to be disturbed by reason of defendant's contention that it is contradicted by compelling physical facts, a matter next to be discussed, under well established rules of review, the verdict cannot be overturned as lacking substantial support.

But it is contended that incontrovertible physical facts support defendant's charge that plaintiff set fire to his own car. Counsel points to the testimony of defense witnesses that the glass portions of the car melted and that the sheet metal portions of the car buckled. In developing this point in his brief, he argues: "The incontrovertible physical facts of the molten glass, the buckled sheet metal, are such that are diametrically opposed to the result of an upholstery fire only, and are consistent with a gasoline fire, therefore plaintiff's theory of upholstery fire only, and any of his evidence thereon, together with all legitimate inferences that may be drawn therefrom must be disregarded and this Court is not compelled to believe them as substantial evidence tending to sustain the verdict. We think the Court can and should take judicial notice of the nature and extent of an upholstery fire and a gasoline fire and the comparative results produced by each."

 In the last sentence just quoted from his counsel's brief, the defendant practically admits that we must take judicial notice of the nature and extent of an upholstery fire and a gasoline fire and the comparative results produced by each before his case is complete for an application of the doctrine invoked. Without this apparent concession, it is obvious there must have been some proof on the subject, either through indisputable evidence or by way of judicial notice before the doctrine relied upon becomes applicable. In Larsen v. Bliss, 43 N.M. 265, 91 P.2d 811, 813, called to our attention by defendant, we quoted approvingly from 10 Blashfield's Cyc. of Automobile Law and Practice, Perm.Ed. § 6554, as follows: "Where facts testified to are opposed to all natural laws and common experience, so that it is inconceivable that any such thing could have occurred, courts will refuse to believe it, on the ground that they will take judicial notice of its incredibility." But also, further on in the opinion, we quoted from Owen v. Appalachian Power Co., 78 W.Va. 596, 89 S.E. 262, the following: "Where there is appreciable doubt or contradiction in the testimony relied upon to establish the very thing which in turn is relied upon as an incontrovertible physical fact, the rule has no place."

██ The last quotation describes the present situation. Unless we are to take judicial notice of the result on glass and sheet metal of the difference in the intensity of heat created by the burning of the destructible matter on the inside of an automobile, unaffected by the application of gasoline and the intensity created by such application (and the defendant cites not a single case in point supporting our right judicially to notice this distinction), then there is "appreciable doubt" as to "the very

thing which * * * is relied upon as an incontrovertible physical fact." Of course, it is a matter of common knowledge that a gasoline fire will produce greater heat than ordinary inflammable articles burning without its application. But whether in the instant case and under the conditions here shown, only the one kind of fire, and not the other, would produce the incontrovertible physical fact relied upon by the defendant to impeach the verdict, we do not know and cannot notice judicially, if it be a fact.

It is next contended that the judgment must be reversed because a verdict for the full value of the car as upon total destruction, claimed by plaintiff in his complaint, is without substantial evidence to support it. The proper measure of damages in cases of this kind is discussed by defendant at some length. A policy provision limiting liability for loss or damage to a sum not exceeding the actual cash value at the time thereof which "shall in no event exceed the liability, if any, stated in paragraph C, 'nor what it would then cost to repair or replace the automobile or parts thereof with other of like kind and quality'," is quoted. Then follows the argument that the tires were shown to be in good condition following the fire and that other portions of the car were in working order. Hence, says the defendant, the plaintiff having wholly failed to offer proof of the cost of repair and replacement, cannot support a verdict for the full value of the car at the time of the fire as for supposed total destruction thereof.

There is some inconsistency in the position taken by the defendant on this issue. Its primary defense at the trial was that of arson—that the plaintiff had set fire to and burned his own car by means of a gasoline fed fire. In proof of this it introduced considerable testimony to demonstrate its theory that only a fire of such great intensity as one fed by gasoline could have wrought the destruction disclosed, particularly, as indicated by the melting of glass and the buckling of sheet metal. The trend of defendant's argument in presenting the present issue, however, is toward demonstrating how little damage the car suffered in the fire.

As a matter of fact, if the issue of damage to the car short of total loss was given consideration prior to verdict, the record fails to disclose it. The case seems to have been submitted to the jury on that theory, the defendant neither requesting nor the court giving any instruction on the proper measure of damages in such a case as this. Cf. Kiker v. Bank Savings Life Insurance Company, 37 N.M. 346, 23 P.2d 366. The defendant's local agent in his report of loss designated it as total.

These facts are mentioned as affording possible explanation of defendant's failure at the trial to make an issue of the matter now presented. There being evidence of the value of the car at the time of the fire sufficient to support the amount of the award and testimony of the extent of damage sufficient, if believed, even if admittedly not strong, to support a finding of

total loss, the matter must be deemed concluded here.

In addition, it may be said that the burden would appear to have been on the defendant to show that the car could have been repaired, rebuilt or restored. Fireman's Fund Ins. Co. v. Galloway, Tex.Civ. App., 281 S.W. 283. Cf. Federal Reserve Bank v. Upton, 34 N.M. 509, 285 P. 494. That this could be done was certainly not pleaded by defendant and the obvious trend of its proof on the issue of arson, as heretofore shown, was in the direction of showing how great, not how little, was the damage.

The defendant says there is no substantial evidence to support the verdict because it fails to show notice and proof of loss. In arguing this matter it fails to point out where it raised the question below. Apparently it is an afterthought. The loss was reported to the local agent of the company immediately following the fire. The agent submitted a report of the loss to defendant and it sent its adjuster to Raton to investigate. He did investigate the loss and the company denied liability. Whether knowledge of the holding of the territorial court in Robinson v. Palatine Ins. Co., Ltd., 11 N.M. 162, 66 P. 535, may explain defendant's failure to urge this point below, does not appear. At any rate, on the state of the record as to this matter, there is nothing that would authorize us to make it the basis of a reversal.

The defendant was neither surprised nor misled by the variance between allegation and proof upon which it now relies to secure reversal. It is said the plaintiff' alleged ownership of the car and emerges from the evidence as a conditional purchaser instead. In his complaint the plaintiff modified his claim of interest by the following allegation, to-wit: " * * * the Plaintiff was the owner of said property so insured subject to a certain mortgage on the same in favor of the International State Bank, a corporation of Raton, New Mexico; that said mortgagee was known to this Defendant and said fact was incorporated in the policy of insurance, the copy of which is annexed hereto and made a part of this Complaint, and marked Exhibit 'A'."

Paragraph D of the policy itself disclosed plaintiff's purchase of the car shortly before the loss, for $876 upon which there was a balance due of $631, payable in monthly installments of $32. Written into the face of the policy or added by endorsement was a clause reading: "Subject to all the stipulations, provisions and conditions of this Policy, loss, if any, under this Policy shall be payable to Assured and International State Bank, Raton, New Mexico, as interest may appear."

The evidence discloses that on March 11, 1940, the day following the fire, the local agent of the defendant reported the loss at plaintiff's instance, describing as a *mortgage* the instrument under which International State Bank carried the paper on the car. When the instrument itself was put in evidence by the plaintiff, however, it was found to be a conditional sales contract

rather than a chattel mortgage. In overruling the defendant's motion for a directed verdict on this ground, the court said: "The Court overrules said motion, among other reasons, as follows: That the agent of the company drew the application for the insurance policy and issued the insurance policy, and in the insurance policy it is specifically stated that the ownership of the car is in the plaintiff subject to an encumbrance to the International State Bank of Raton, New Mexico."

The trial court must have referred to the loss payable clause quoted above which does not itself designate the instrument either as a mortgage or as a conditional sales contract. However, the report of loss made by the agent of the company to his principal, the defendant, the day following the fire, did contain the statement: "The auto is not encumbered except as follows: 'Mtg. to International State Bank, Raton, New Mexico'." Counsel's chief concern regarding this matter seems to arise from the fear that the defendant may be compelled to pay the loss twice. "Assuming", says counsel, "that plaintiff wins the lawsuit and collects the money, what's to stop the bank from turning around and bring suit for the insurance on the car?" No doubt the defendant will know how to protect itself against such contingency. It has known all along that the bank held an encumbrance on the car or some interest in it. It might have made the bank a party itself in advance of judgment and thus have protected itself against the danger apprehended by counsel. Turn-

er v. New Brunswick Fire Insurance Co., 45 N.M. 126, 127, 112 P.2d 511. That the plaintiff had an insurable interest entitling him to sue there can be no doubt, as held in the Turner case just cited. In Epstein v. Waas, 28 N.M. 608, 216 P. 506, 508, we said: "We think the departure must be such as to mislead the opposite party to his prejudice in maintaining his action or defense. Courts have been liberal in disregarding immaterial and inconsequential variances which do not mislead nor prejudice the opposite party." See 1929 Comp., § 105-601.

Under the facts here shown, we consider the objection technical and in no manner calculated to surprise or mislead the defendant to its prejudice.

The defendant seeks to put the trial court in error in overruling its motion for a mistrial based upon the allowance of an amendment of the verdict. After the jury had deliberated it returned with a verdict reading: "We the jury in the above entitled cause find the issues in favor of plaintiff and assess his damages in the sum of $——, full face value of the policy. Walter Witt, Foreman". Comment of the trial court at the time strongly indicates defendant's objections were urged after the trial court had permitted the amendment. Following the court's comment and an inquiry of the jury whether it wished to amend the verdict, the jury returned for further deliberation and brought into the court room the following verdict: "We the jury in the above entitled cause find

the issues in favor of the plaintiff and assess his damages in the sum of $845. Walter Witt, Foreman." The verdict was received by the court and filed with the clerk.

Even if we assume the objection was timely made, an assumption somewhat impeached by the record, we find no error in the action of the trial court in permitting this amendment of the verdict. Di Palma v. Weinman, 16 N.M. 302, 121 P. 38.

 Finally, error is assigned upon the admission in evidence of certain exhibits, designated plaintiff's exhibits 2, 3 and 4, being certain articles removed from the car about the time of the fire. Following introduction of the exhibits, the plaintiff offered to demonstrate that exhibit 2 was combustible, apparently intending to conduct the same demonstration as to the other exhibits. The trial court declined to permit the demonstration over defendant's objection that it was not shown the exhibit was in the same condition or that the same conditions then prevailed as at the time and place of the fire. Since plaintiff was blocked in his effort to make the demonstrations desired, we can see no prejudice resulting to defendant from the mere view by the jury of these small, inanimate objects taken from the interior of the automobile. This claim of error accordingly is denied.

It follows from what has been said that the judgment appealed from must be affirmed.

It is so ordered.

MABRY, BICKLEY, and BRICE, JJ., concur.

ZINN, C. J., being absent, did not participate.